**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SARRAH ROUAS,

Plaintiff,

v. CASE NO:

WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY,

Defendant

_______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SARRAH ROUAS, (hereinafter "Plaintiff" or "Ms. Rouas"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY (hereinafter"Defendant," "Walt Disney World," or "Company") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on race and national origin, hostile work environment, and retaliation in violation of 42 U.S. Code § 1981 - Equal rights under the law; Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"); disability discrimination under the Americans with Disabilities Act, as amended ("ADA"); and retaliation under Florida's Private Whistleblower Act, § 448.102, Florida Statutes.

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her race and national origin, subjected her to a hostile work environment, retaliated against her for opposing discriminatory practices, subjected her to disparate treatment based on an actual or perceived disability, and ultimately terminated her employment.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including, but not limited to, loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. Most facts and circumstances arising from this dispute took place in Orange County, Florida.

**PARTIES**

8. Plaintiff is a 31-year-old mixed-race woman (White and Black) of Moroccan national origin and African ancestry who resided in Lake County, Florida for the duration of her employment.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her race and national origin under 42 U.S. Code § 1981, Title VII, and the FCRA.

10. During the period from May 25, 2022, until November 22, 2024, Defendant employed Plaintiff as a Server Assistant, first at the 50's Prime Time Café at Disney's Hollywood Studios and later at Tony's Town Square Restaurant at the Magic Kingdom.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by 42 U.S. Code § 1981, Title VII, and the FCRA.

13. The Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, is a business entity that owns and operates the Walt Disney World Resort in Orange County, Florida,

including Disney's Hollywood Studios located at 351 South Studio Drive, Lake Buena Vista, Florida 32830, and the Magic Kingdom, where it employed Plaintiff.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Orange County, Florida.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, 42 U.S. Code § 1981, Title VII, and the FCRA.

16. Accordingly, Defendant is liable under 42 U.S. Code § 1981, Title VII, and the FCRA for the unlawful discrimination, hostile work environment, and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On September 4, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race and national

origin discrimination and retaliation (EEOC Charge No. 510-2025-12291).

19. On August 11, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, including a Notice of Right to Sue, in reference to her Charge of Discrimination against Defendant.

20. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

21. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22. All conditions precedent to bringing this action have been performed or have occurred.

**<u>FACTUAL BACKGROUND AND GENERAL ALLEGATIONS</u>**

23. Plaintiff, SARRAH ROUAS, is a mixed-race woman (White and Black) of Moroccan national origin and African ancestry.

24. On May 25, 2022, Defendant hired Plaintiff as a part-time, tipped Server Assistant at the 50's Prime Time Café at Disney's Hollywood Studios in

Orange County, Florida.

25. As a Server Assistant, Plaintiff earned a base rate of approximately $8.98 per hour and earned approximately $27.02 per hour with tips, typically working approximately 22.5 hours per week on Friday, Saturday, and Sunday shifts.

26. Plaintiff's position was part of a bargaining unit whose terms and conditions of employment were governed by the Service Trades Council Union Agreement.

27. The discriminatory and hostile conduct began shortly after Plaintiff started her employment. On August 7, 2022, Manager Terrence took Plaintiff alone into the restaurant freezer and verbally berated her in an aggressive and intimidating manner where an employee by the name of Robyn was present.

28. On August 26, 2022, coworker Maria Luz Morais became aggressive towards Plaintiff after she asked about an observed change to scheduled staff and withheld from engaging or communicating with Plaintiff in the presence of employees. On August 26, 2022, coworker Maria disclosed Plaintiff's Moroccan heritage to Haitian employee Rudy. Thereafter, a senior employee to Plaintiff known as Devan made derogatory comments in the

presence of management, about Muslim guests including offensive remarks concerning "Indian Muslims and their body odor" and stated "It's the group that always gets into fights with the Jews."

29. Around October 2022, Plaintiff observed heightened scrutiny and selective enforcement directed toward minority employees including Hispanic/Latino employees which she did not engage in. On or about October 9, 2022, she observed management reprimand Hispanic employees and observed lateral peer employee Francisco ("Isco") Bautista Torres was later terminated. Plaintiff abstained from participating in what she believed was discriminatory targeting of minority employees and raised concerns about such treatment. Plaintiff also observed Kimberly McCormick targeting Maria Luz Morais, another Hispanic employee, which further contributed to Plaintiff's belief that employees were being subjected to heightened scrutiny and selective treatment.

30. On a date Plaintiff cannot presently identify, coworker Ryan Hunter also made a derogatory statement directed at Plaintiff to the effect that Jewish people were responsible for the problems in the world and that everyone hated them.

31. On or about October 16, 2022, Plaintiff observed that Black

employees were disproportionately assigned to the dish pit and steam-room areas, which Plaintiff perceived as racially segregated.

32. On October 22, 2022, coworker Kaleigh confronted Plaintiff in a threatening manner, stating words to the effect of "I'm not the one to mess with" and "I'll show you aggressive."

33. During approximately December 18 through December 25, 2022, server Max withheld tips from Plaintiff while ensuring that Hispanic food runners received their tip payments.

34. On or about March 17, 2023, Briana Robertson stated in a meeting she was glad Plaintiff didn't get "loud" and "aggressive," language Plaintiff understood as reinforcing racial stereotypes directed toward her as a mixed-race Black woman.

35. On or about December 23, 2023, Plaintiff alleges that coworker Hannah singled her out and spoke down to her in connection with her Moroccan or Arab identity, while Quinn Fordyce associated Plaintiff with being Asian based on her work style and aesthetic, further contributing to Plaintiff's perception that coworkers were stereotyping and targeting her based on perceived race, ethnicity, and national origin.

36. Throughout her employment, Plaintiff was subjected to ongoing

racial and national origin discrimination and harassment by multiple coworkers, including Glorimar Zabala Sanchez, Maria "Luz" Morais, Stiany Melendez Cisner, Alex Matamoros Celis, Yasmeena Oukhouya, and Loukili Anass. Plaintiff alleges that Yasmeena Oukhouya and Loukili Anass, although themselves Moroccan, aligned with other coworkers in conduct that modeled similar behaviors as other coworkers.

37. The discriminatory conduct to which Plaintiff was subjected included exclusion from workplace activities, withholding communication, excessive scrutiny of her work, infantilization, being talked down to, and being screamed at.

38. Plaintiff was subjected to derogatory comments about her hair texture being associated with Black people and being inferior, and she received comments like "Oh you're of course going to help your kind" by her Hispanic/Latino coworkers.

39. Plaintiff was also subjected to a pattern in which her Hispanic and Latino coworkers deliberately spoke Spanish in her presence and in management's absence in order to gossip about, target, and exclude her creating a hostile work environment.

40. On August 26, 2022, when Plaintiff asked a coworker, Glorimar

Zabala Sanchez, a question about a table with a food allergy and again about a guest's request, Glorimar condescendingly shouted at Plaintiff, "What's the magic word?"

41. On May 5, 2023, an individual known to Plaintiff as Nathan, whom Plaintiff recalls as a member of the culinary staff and believes may have been a chef assistant, made a comment to Plaintiff, in reference to her eating a date, that the last time he ate one was when he served in the army and was "carpet-bombing Iraq," a remark directed at Plaintiff's Middle Eastern heritage.

42. On December 16, 2023, Defendant issued Plaintiff an Interoffice Memorandum characterizing the workplace conflicts as personal in nature and warning of discipline, notwithstanding that Plaintiff had raised concerns that she was the target of the harassment and that management had disregarded the offending conduct.

43. On February 11, 2024, Glorimar Zabala Sanchez berated Plaintiff in a loud, condescending, and infantilizing tone, telling her to go wash her hands, conduct that was directed at Plaintiff and not at other similarly situated coworkers such as Maria "Luz" Morais, Alex Matamoros Celis, or Stiany Melendez Cisner. In addition to the foregoing, Plaintiff was subjected

to demeaning and dehumanizing conduct by coworkers, including having drinks spilled on her and having her hair pet without her consent.

44. Plaintiff further recalls that, on a date she cannot presently identify, coworker Jordan Ciccone spun and hurled a tray at Plaintiff's direction as she was exiting the kitchen into the restaurant.

45. The discrimination and harassment significantly affected Plaintiff's mental health and well-being. As a direct result of the hostile work environment, Plaintiff experienced depression and anxiety throughout her employment and was compelled to contact crisis and suicide prevention hotlines on multiple occasions due to the severe emotional distress she endured as well as enroll in therapy.

46. Before her formal complaint was submitted in February 2024, Plaintiff had already opposed what she perceived to be discriminatory targeting including declining to participate in such targeting and by providing written notice to management on December 23, 2023 concerning discriminatory scrutiny and treatment. Plaintiff alleges that management, including Dana Johnson and Briana Robertson responded by assuring her that "no one was going to get fired," yet the pattern of selective enforcement and scrutiny later shifted increasingly toward Plaintiff.

47. Following Plaintiff's written notice to management on December 23, 2023, concerning discriminatory scrutiny and treatment, management temporarily ceased scrutiny of Plaintiff's work and separated her from the involved employees. However, management subsequently reintroduced them to her work area resulting in the Hispanic/Latino employees proceeding to single out Plaintiff on February 11, 2024 with witnesses present. Glori proceeded to scream at, scrutinize behavior of Plaintiff in the presence of Maria Luz Morais and Alex Matamoros Celis which Plaintiff received as intimidating behavior and formally put management on notice of the discrimination.

48. On February 16, 2024, Plaintiff filed her first written complaint with management regarding the discrimination she was experiencing, complaining to Dana Johnson and Briana Robertson about the ongoing harassment and discriminatory treatment.

49. Although Defendant stated an investigation was launched, it ultimately disregarded Plaintiff's claims. While Defendant had coaching conversations with the employees who were discriminating against Plaintiff, Defendant allowed the problem to persist and failed to take meaningful corrective action to stop the harassment.

50. On March 8, 2024, Plaintiff put management on notice that she would be observing Ramadan and raised concerns regarding management scrutinizing her work along with the Hispanic/Latino employees during this time.

51. Around late April 2024, Plaintiff was involved in a motor vehicle accident and, as a result, took a leave of absence from her employment with Defendant. Plaintiff returned to work from that leave on or about June 9, 2024.

52. On or about June 11, 2024, at approximately 11:00 a.m., a coworker, Adrienne Williams, approached Plaintiff at Fitness CF, a gym unaffiliated with Defendant. Ms. Williams appeared to be aware of the workplace harassment Plaintiff had reported and of Plaintiff's recent motor vehicle accident. Notwithstanding that knowledge, Ms. Williams made sexually suggestive looks and comments about Plaintiff's body, similar to comments and tone previously made toward Plaintiff by coworker Quinn Fordyce, and antagonistically probed Plaintiff about Palestine. Ms. Williams appeared pleased that Plaintiff was being bullied at work and disregarded and minimized Plaintiff's recent return from leave following her motor vehicle accident.

53. Additionally, a coworker, Steevenson Brisard, told Plaintiff that

she was "lucky to be on leave," trivializing Plaintiff's medical leave following her motor vehicle accident as though it were a vacation.

54. Plaintiff continued to complain about the discriminatory treatment, including through a text message to management on or about June 19, 2024, a meeting with management on or about June 21, 2024, a follow-up email on or about June 22, 2024 expressly referencing conduct directed at her because of attributes associated with being Black and having African ancestry, a written statement in August 2024, and a further email to management on or about September 13, 2024.

55. On August 30, 2024, a coworker, Luke Sankey, made a racist comment insinuating that Plaintiff was like "those savages that raise animals up for slaughter and don't name them."

56. Rather than remediating the discrimination, Defendant subjected Plaintiff to escalating retaliation following her complaints.

57. After Plaintiff complained, her shifts were changed and she was subjected to heightened and disparate scrutiny of her work and personal conduct.

58. Defendant failed to pay Plaintiff for all hours she worked, withholding wages for numerous hours across multiple pay periods.

59. On August 31, 2024, Defendant placed a coaching counseling entry on Plaintiff's record card in connection with a conversation that Plaintiff maintains never occurred.

60. On September 21, 2024, Daniel Kimmel and Quinn Fordyce adopted an infantilizing and demeaning tone to the concerns Sydney Stringer raised threatening to "take her ID away" and invalidated her ongoing concerns regarding harassment, intimidation and retaliation she was experiencing following her federally protected complaint.

61. On October 6, 2024, Plaintiff was sent home from work for wearing painted nails, while a similarly situated coworker Glori who routinely wore painted nails and worked directly with food was not disciplined for the same conduct.

62. On or about October 23, 2024, Defendant notified Plaintiff that a transfer she had initiated through Defendant's internal Genie portal to Tony's Town Square Restaurant at the Magic Kingdom had been approved, with an effective date of November 17, 2024. Plaintiff alleges that she sought the transfer in an effort to escape the ongoing hostile and retaliatory environment at 50's Prime Time Café and that similar hostility was present during her training at Tony's Town Square.

63. Beginning on or about October 27, 2024, and continuing through November 3, 2024, prior to Plaintiff's transfer, Defendant documented a series of alleged violations of its food allergy service procedures and used those alleged violations as the basis for issuing Plaintiff disciplinary points.

64. Plaintiff has been diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD") and Autism Spectrum Disorder. Plaintiff alleges that, during the relevant period, coworkers and management perceived or regarded her as having traits associated with ADHD and/or Autism and that Defendant will contend the alleged allergy service errors resulted from inattentiveness or mistake rather than discriminatory or retaliatory animus.

65. On November 8, 2024, immediately after Plaintiff began a required "Standards of Operation and Procedure" training course and assessment on Defendant's DLearn platform, Plaintiff's manager, Sydney Strynger, pulled Plaintiff aside to have her write a statement regarding the November 3, 2024 allergy service incident referenced above. While Plaintiff was taking the assessment, several individuals entered the office making noise disturbances, jokes and engaged in banter in an effort to distract her. Chef John R. Kawczak ("JR") was the chef on duty at that time, and shop steward Quinn Fordyce sat in with Plaintiff while she wrote her statement. Quinn Fordyce, Perry

Baniakas, Sydney Stringer and Katherine Beaudoin witnessed these events.

66. On November 15, 2024, Defendant issued Plaintiff two separate two-point disciplinary reprimands, for a total of four points, based on alleged allergy service errors said to have occurred on October 27, 2024.

67. On November 22, 2024, on the second day of Plaintiff's training at Tony's Town Square Restaurant, Defendant issued Plaintiff a third two-point reprimand based on an alleged allergy service error said to have occurred on November 3, 2024, bringing Plaintiff to a total of six disciplinary points.

68. Plaintiff was terminated that same day, November 22, 2024, on the stated basis that she had accumulated six disciplinary points within a twelve-month period in violation of company policy.

69. Of the six disciplinary points Plaintiff received, only two were valid, while the remaining four were fabricated as a pretext for retaliation.

70. Defendant's stated reason for Plaintiff's termination was false and pretextual. Similarly situated coworkers who committed comparable or more serious food allergy service errors, including a Server Assistant Maddie Irwin who ran onion rings to a guest with an egg allergy, were not disciplined or terminated, and coworkers who had engaged in the discriminatory conduct against Plaintiff, including Glorimar Zabala Sanchez and Maria "Luz" Morais,

remained employed.

71. Following her termination, Plaintiff timely pursued a grievance through her union through representative Alma Javier. Defendant denied the grievance at the second step on or about January 5, 2025, and her separation with the Walt Disney World Company was finalized.

72. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered significant damages, including lost wages and benefits, lost earning capacity, severe emotional distress, depression and anxiety, humiliation, loss of enjoyment of life, and damage to her professional reputation.

73. The disruption associated with the discriminatory and retaliatory environment interfered with Plaintiff's professional development, including her ability to complete an MIT Machine Learning program and fully participate with her cohort, while other cohort participants completed the program and obtained full-time employment opportunities.

74. Plaintiff also alleges that the disruption to her employment and professional functioning caused her to place a separate side venture/business on hold, resulting in additional claimed loss of earning capacity and business opportunity.

75. Plaintiff further alleges that the prolonged need to manage, document, and respond to the workplace discrimination and retaliation caused withdrawal from professional and industry participation, impaired her professional identity formation, and substantially interfered with her enjoyment of life.

**COUNT I**
**VIOLATION OF 42 U.S. CODE § 1981**
**RACE DISCRIMINATION**

73. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

74. 42 U.S. Code § 1981 - Equal rights under the law - makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's race.

75. Plaintiff is a mixed-race woman (White and Black) of African ancestry and a member of a protected class protected by 42 U.S. Code § 1981 from discrimination based on her race.

76. At all times material herein, Defendant was and is an "employer" within the meaning of 42 U.S. Code § 1981.

77. The actions and inaction of Defendant, by and through the

conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on Plaintiff's race.

78. As her employer, Defendant was obligated to guard against the discrimination of Plaintiff by her co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

79. Defendant violated 42 U.S. Code § 1981 by, among other things, subjecting Plaintiff to disparate treatment because of her race, allowing & participating in derogatory race-based comments and conduct, subjecting Plaintiff to heightened and selective scrutiny and discipline, terminating her employment under circumstances giving rise to an inference of race discrimination, and failing to take prompt and effective remedial action when made aware of the discriminatory conduct.

80. Plaintiff, by being subjected to this discrimination by Defendant, was unreasonably and negatively affected in the terms, conditions, and privileges of her employment with Defendant.

81. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise

reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived her of statutory rights under 42
U.S. Code § 1981.

82. Plaintiff can establish that she suffered damages because of unlawful discrimination in violation of 42 U.S. Code § 1981.

83. Defendant fostered, condoned, accepted, ratified, and/or otherwise failed to prevent or remedy discriminatory conduct due to race.

84. Defendant is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Plaintiff's employment in violation of 42 U.S. Code § 1981.

85. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Emotional distress damages;

d. Pain and suffering, mental anguish, loss of dignity, and loss of the capacity for the enjoyment of life;

e. Damage to her professional reputation; and

f. Other economic losses proximately caused and allowable under 42 U.S. Code § 1981; and

76. Defendant's unlawful discriminatory actions constitute reckless, malicious, willful, and wanton violations of 42 U.S. Code § 1981 for which Plaintiff is entitled to an award of punitive damages.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated 42 U.S. Code § 1981 by discriminating against Plaintiff based on her race;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of Defendant's discrimination against her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and related benefits;

C. Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, including emotional distress damages;

D. Award punitive damages to Plaintiff because of Defendant's reckless, malicious, willful, wanton, and unlawful discriminatory actions in violation of 42 U.S. Code § 1981;

E. Award Plaintiff all other damages available under 42 U.S. Code § 1981, including, but not limited to, the damages set forth above and other economic losses proximately caused;

F. Award Plaintiff pre- and post-judgment interest;

G. Award Plaintiff her attorneys' fees, including litigation expenses, and the costs of this action; and

H. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT II**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Race Discrimination**

87. Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

88. Plaintiff is a mixed-race woman (White and Black) and a member of a protected class under Title VII.

89. At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

90. Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a).

91. At all times material herein, Plaintiff was qualified for her position and performed her job duties in a satisfactory and above-satisfactory manner.

92. Defendant subjected Plaintiff to materially adverse employment actions and less favorable terms and conditions of employment because of her race, including heightened and selective scrutiny, disparate discipline, and the termination of her employment.

93. Similarly situated coworkers who were not of Plaintiff's race, including those who committed comparable food allergy service errors, were treated more favorably than Plaintiff and were not subjected to the same discipline or termination.

94. Defendant, through its supervisors, managers, and Human

Resources personnel, knew or should have known of the race discrimination suffered by Plaintiff, as Plaintiff made multiple complaints regarding the discriminatory treatment.

95. Despite knowledge of the discriminatory conduct, Defendant failed to take appropriate corrective action and instead allowed the discriminatory treatment to continue and escalate, culminating in Plaintiff's termination.

96. Defendant's stated reasons for its actions were false, pretextual, and fabricated reasons for its conduct.

97. The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under Title VII.

98. Defendant's actions constitute discrimination in violation of Title VII.

99. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation; and

f. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by discriminating against Plaintiff based on her race;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full back-pay with interest,

and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D. Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## National Origin Discrimination

100. Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

101. Plaintiff is of Moroccan national origin and is a member of a protected class under Title VII.

102. At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

103. At all times material herein, Plaintiff was qualified for her position and performed her job duties in a satisfactory or above-satisfactory manner.

104. Defendant subjected Plaintiff to materially adverse employment actions and less favorable terms and conditions of employment because of her national origin, including derogatory comments concerning her Moroccan and North African heritage, coworkers deliberately speaking Spanish in management's absence to gossip, signaling to other members not to pay her, to exclude and target her while adding heightened and selective scrutiny, disparate discipline, and the termination of her employment.

105. Similarly situated coworkers who were not of Plaintiff's national origin were treated more favorably than Plaintiff.

106. Defendant, through its supervisors, managers, and Human Resources personnel, knew or should have known of the national origin

discrimination suffered by Plaintiff, as Plaintiff made multiple complaints regarding the discriminatory treatment.

107. Despite knowledge of the discriminatory conduct, Defendant failed to take appropriate corrective action and instead allowed the discriminatory treatment to continue and escalate.

108. Defendant's stated reasons for its actions were false, pretextual, and not the real reasons for its conduct.

109. The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to refrain from engaging in, exercising reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under Title VII.

110. Defendant's actions constitute discrimination in violation of Title VII.

111. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation; and

e. Other nonpecuniary losses, tangible and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by discriminating against Plaintiff based on her national origin;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full back pay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D. Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## Hostile Work Environment Based on Race and National Origin

112. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

113. Plaintiff is a mixed-race woman (White and Black) of Moroccan national origin and a member of protected classes under Title VII.

114. At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

115. During her employment, Plaintiff was subjected to unwelcome harassment based on her race and national origin.

116. The harassment included, among other things, derogatory comments about Plaintiff's hair texture being associated with Black people and being inferior, being referred to as "your kind," derogatory comments concerning her American, Moroccan, Middle Eastern, and North African heritage, coworkers deliberately speaking Spanish in management's absence signaling to other members not to pay her, in order to gossip about, target, and exclude her from workplace activities, engage in excessive scrutiny, infantilization, being talked down to, and being screamed at.

117. The foregoing conduct was unwelcome and was directed at Plaintiff because of her race and national origin.

118. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive and hostile working environment.

119. A reasonable person in Plaintiff's position would find the environment hostile and abusive, and Plaintiff in fact perceived it to be hostile and abusive.

120. Defendant, through its supervisors, managers, and Human Resources personnel, knew or should have known of the hostile work environment and failed to take prompt and effective remedial action.

121. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the hostile work environment, deprived Plaintiff of statutory rights under Title VII.

122. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation; and

f. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by subjecting Plaintiff to a hostile work environment based on her race and national origin;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the hostile work environment to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full back pay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the hostile work environment she has endured;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature,

extent, and duration of her injuries and damages caused by the hostile work environment Defendant subjected her to pursuant to Title VII;

D. Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT V**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Retaliation**

123. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

124. Plaintiff engaged in protected activity under Title VII by making

complaints to management regarding racial and national origin discrimination and the hostile work environment, including her written complaint on or about February 16, 2024 and her subsequent complaints in June 2024, August 2024, and September 2024.

125. Following Plaintiff's protected activity, Defendant engaged in materially adverse employment actions against Plaintiff, including but not limited to:

a. Changing Plaintiff's shifts and subjecting her to heightened and selective scrutiny;

b. Withholding wages for hours Plaintiff worked;

c. Placing a coaching counseling entry on Plaintiff's record card for a conversation that never occurred;

d. Continuing heightened scrutiny and retaliatory treatment after Plaintiff's requested transfer to Tony's Town Square;

e. Issuing Plaintiff fabricated disciplinary points for alleged allergy service errors; and

f. Terminating Plaintiff's employment on November 22, 2024; and

g. Permitting Plaintiff, through coworkers including Adrienne

Williams and Steevenson Brisard, to harassment concerning her protected activity and medical leave, as described above.

126. A causal connection exists between Plaintiff's protected activity and the adverse employment actions, as evidenced by the temporal proximity and the pattern of escalating retaliatory conduct following her complaints.

127. Defendant's actions would dissuade a reasonable worker from making or supporting a charge of discrimination.

128. Defendant's stated reasons for its actions were false, pretextual, and retaliatory.

129. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation; and

f. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of

all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff based on her protected activity;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full back pay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation she has endured;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to Title VII;

D. Award Plaintiff all other damages available under Title VII,

including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VI
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Race Discrimination

130. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

131. Plaintiff is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of her race.

132. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

133. Defendant is a "person" within the meaning of the FCRA, §

760.02(6), Florida Statutes.

134. At all times material herein, Plaintiff was qualified for her position and performed her job duties in a satisfactory or above-satisfactory manner.

135. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on Plaintiff's race, including heightened and selective scrutiny, disparate discipline, and the termination of her employment, while similarly situated coworkers not of Plaintiff's race were treated more favorably.

136. As her employer, Defendant was obligated to guard against the discrimination of Plaintiff by her co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

137. Defendant violated the FCRA by, among other things, failing to promptly correct the discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to discrimination because of her race.

138. Defendant's stated reasons for its actions were false, pretextual, and fabricated false reasons for its conduct.

139. Plaintiff, by being subjected to this discrimination created by

Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of her employment with Defendant.

140. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation; and

f. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on her race;

B. Award sufficient remedial relief to make Plaintiff whole for the individual losses she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and related benefits;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate her for the nature, extent, and duration of her injuries and damages, including but not limited to lost wages and emotional distress damages;

D. Award Plaintiff all other damages available under the FCRA including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under these statutes, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VII
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## National Origin Discrimination

141. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

142. Plaintiff is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of her national origin.

143. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

144. Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes.

145. At all times material herein, Plaintiff was qualified for her position and performed her job duties in a satisfactory or above-satisfactory manner.

146. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on Plaintiff's national origin, including derogatory comments concerning her American , Moroccan, Middle Eastern, and North African heritage, coworkers deliberately speaking Spanish in management's absence signaling & gossiping

to other members not to pay her, to target, and exclude her, heightened and selective scrutiny, disparate discipline, and the termination of her employment, while similarly situated coworkers not of Plaintiff's national origin were treated more favorably.

147. As her employer, Defendant was obligated to guard against the discrimination of Plaintiff by her co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

148. Defendant violated the FCRA by, among other things, failing to promptly correct the discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to discrimination because of her national origin.

149. Defendant's stated reasons for its actions were false, pretextual, and not the real reasons for its conduct.

150. Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of her employment with Defendant.

151. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the FCRA, Plaintiff has

suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation; and

f. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on her national origin;

B. Award sufficient remedial relief to make Plaintiff whole for the individual losses she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and related benefits;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate her for the nature, extent, and duration of her injuries and damages, including but not limited to lost wages and emotional distress damages;

D. Award Plaintiff all other damages available under the FCRA including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under these statutes, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT VIII**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Hostile Work Environment Based on Race and National Origin**

152. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

153. Plaintiff is a member of protected classes under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of her race and national origin.

154. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

155. During her employment, Plaintiff was subjected to unwelcome harassment based on her race and national origin.

156. The harassment included, among other things, derogatory comments about Plaintiff's hair texture being associated with Black people and being inferior, being referred to as "your kind," derogatory comments concerning her American, Moroccan, Middle Eastern, and North African heritage, coworkers deliberately speaking Spanish in management's absence to gossip, signal to other members not to pay her, to target and exclude her, exclusion from workplace activities, excessive scrutiny, infantilization, being talked down to, and being screamed at.

157. The foregoing conduct was unwelcome and was directed at Plaintiff because of her race and national origin.

158. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive and hostile working environment.

159. A reasonable person in Plaintiff's position would find the environment hostile and abusive, and Plaintiff in fact perceived it to be hostile and abusive.

160. Defendant, through its supervisors, managers, and Human Resources personnel, knew or should have known of the hostile work environment and failed to take prompt and effective remedial action.

161. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent Plaintiff's hostile work environment, deprived her of statutory rights under the FCRA.

162. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation; and

f. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by subjecting Plaintiff to a hostile work environment based on her race and national origin;

B. Award sufficient remedial relief to make Plaintiff whole for the individual losses she has suffered because of the hostile work environment to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and related benefits;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate her for the nature, extent, and duration of her injuries and damages, including but not limited to lost wages and emotional distress damages;

D. Award Plaintiff all other damages available under the FCRA

including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under these statutes, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT IX**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Retaliation**

163. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

164. Plaintiff engaged in protected activity under the FCRA by making complaints to management regarding racial and national origin discrimination and the hostile work environment, including her written complaint on or about February 16, 2024 and her subsequent complaints in June 2024, August 2024, and

September 2024.

165. Following Plaintiff's protected activity, Defendant engaged in materially adverse employment actions against Plaintiff as previously set forth in this Complaint, including changing Plaintiff's shifts, subjecting her to heightened and selective scrutiny, withholding wages, placing a coaching counseling entry on her record card for a conversation that never occurred, continuing heightened scrutiny and retaliatory treatment following her requested transfer, issuing her allegedly fabricated disciplinary points, subjecting her to workplace harassment through coworkers concerning her protected activity and medical leave, and terminating her employment on November 22, 2024.

166. A causal connection exists between Plaintiff's protected activity and the adverse employment actions, as evidenced by the temporal proximity and the pattern of escalating retaliatory conduct following her complaints.

167. Defendant's actions would dissuade a reasonable worker from making or supporting a charge of discrimination.

168. Defendant's stated reasons for its actions were false, pretextual, and retaliatory.

169. As a direct, proximate and foreseeable result of Defendant's

aforementioned actions, inactions, and violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation; and

f. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff based on her protected activity;

B. Award sufficient remedial relief to make Plaintiff whole for the individual losses she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to, front

pay in lieu of reinstatement, full backpay with interest, and related benefits;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate her for the nature, extent, and duration of her injuries and damages, including but not limited to lost wages and emotional distress damages;

D. Award Plaintiff all other damages available under the FCRA including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under these statutes, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT X**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Disability Discrimination**

170. Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

171. Plaintiff is an individual with a disability, has a record of a disability, and/or was regarded by Defendant as having a disability, within the meaning of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12102 ("ADA"), in that Plaintiff has been diagnosed with ADHD and Autism Spectrum Disorder, and is a member of a class protected under the ADA.

172. At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

173. Moreover, Defendant is a "covered entity" within the meaning of the ADA, 42 U.S.C. § 12111(2).

174. At all times material herein, Plaintiff was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of her position.

175. Defendant subjected Plaintiff to materially adverse employment actions and less favorable terms and conditions of employment because of her actual or perceived disability, including subjecting her to a hostile and distracting environment during a training assessment on November 8, 2024,

heightened and selective scrutiny of alleged performance errors, disparate discipline, and the termination of her employment.

176. Similarly situated coworkers who were not disabled and/or not regarded by Defendant as disabled, including those who committed comparable or more serious food allergy service errors, were treated more favorably than Plaintiff and were not subjected to the same discipline or termination.

177. Defendant, through its supervisors, managers, employees, and Human Resources personnel, knew or should have known of Plaintiff's actual or perceived disability and of the alleged stereotyping, heightened scrutiny, and disparate treatment directed toward her based on perceived characteristics.

178. Despite that knowledge, Defendant failed to take appropriate corrective action and instead allowed the discriminatory treatment to continue and escalate, culminating in Plaintiff's termination.

179. Defendant's stated reasons for its actions were false, pretextual, and not the real reasons for its conduct.

180. The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise

reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under the ADA.

181. Defendant's actions constitute discrimination in violation of the ADA.

182. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation;

f. Pecuniary and out-of-pocket losses; and

g. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that

this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA by discriminating against Plaintiff based on her disability;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full back pay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to the ADA;

D. Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT XI**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Disability Discrimination**

183. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

184. Plaintiff is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of her actual or perceived disability, in that Plaintiff has been diagnosed with ADHD and/or Autism Spectrum Disorder.

185. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

186. Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes.

187. At all times material herein, Plaintiff was qualified for her position and performed her job duties in a satisfactory or above-satisfactory manner, with or without reasonable accommodation.

188. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful discrimination based on Plaintiff's actual or perceived disability, including heightened and selective scrutiny, disparate discipline, and the termination of her employment, while similarly situated non-disabled coworkers were treated more favorably.

189. As her employer, Defendant was obligated to guard against the discrimination of Plaintiff by her co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from discrimination in the workplace.

190. Defendant violated the FCRA by, among other things, failing to promptly correct the discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to discrimination because of her actual or perceived disability.

191. Defendant's stated reasons for its actions were false, pretextual,

and not the real reasons for its conduct.

192. Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of her employment with Defendant.

193. As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation;

f. Pecuniary and out-of-pocket losses; and

g. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on her disability;

B. Award sufficient remedial relief to make Plaintiff whole for the individual losses she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and related benefits;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate her for the nature, extent, and duration of her injuries and damages, including but not limited to lost wages and emotional distress damages;

D. Award Plaintiff all other damages available under the FCRA including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under these statutes, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees, reasonable expert witness

fees, and the costs of this action; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT XII**
**VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER ACT**

194. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

195. Plaintiff engaged in statutorily protected activity under Florida's Private Whistleblower Act, § 448.102(3), Florida Statutes, by objecting to and refusing to participate in Defendant's allegedly unlawful employment practices, including race and national origin discrimination and harassment. Plaintiff's opposition included declining to participate in what she perceived as discriminatory targeting of minority employees, providing written notice to management concerning discriminatory scrutiny and treatment before October 2023, submitting a written complaint on or about February 16, 2024, and making subsequent complaints and objections in June 2024, August 2024, and September 2024.

196. Following Plaintiff's protected activity, Defendant engaged in retaliatory personnel actions against Plaintiff, including changing her shifts,

subjecting her to heightened and selective scrutiny, withholding wages, placing a coaching counseling entry on her record card for a conversation that never occurred, continuing heightened scrutiny following her requested transfer, issuing her allegedly fabricated disciplinary points, subjecting her to workplace harassment concerning her protected activity and medical leave, and terminating her employment on November 22, 2024.

197. A causal connection exists between Plaintiff's protected activity and Defendant's retaliatory personnel actions, as evidenced by the temporal proximity and the pattern of escalating retaliatory conduct following her objections.

198. Defendant's stated reasons for its actions were false, pretextual, and retaliatory.

199. As a direct, proximate and foreseeable result of Defendant's violation of § 448.102, Florida Statutes, Plaintiff has suffered, continues to suffer, and will suffer the following:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Severe emotional distress;

d. Depression and anxiety;

e. Damage to her professional reputation;

f. Pecuniary and out-of-pocket losses proximately caused by the unlawful conduct alleged herein; and

g. Other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, SARRAH ROUAS, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC. d/b/a WALT DISNEY WORLD COMPANY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated Florida's Private Whistleblower Act, § 448.102, Florida Statutes, by retaliating against Plaintiff based on her protected activity;

B. Award sufficient remedial relief to make Plaintiff whole for the individual losses she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and related benefits;

C. Award compensatory damages to Plaintiff in an amount that will

fully, justly, and reasonably compensate her for the nature, extent, and duration of her injuries and damages;

D. Award Plaintiff all other damages available under § 448.102, et seq., Florida Statutes, according to proof;

E. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F. Award Plaintiff her attorneys' fees and costs of this action pursuant to

§ 448.104, Florida Statutes; and

G. Grant such other and further relief as this Court may deem equitable, just, and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by Jury.

Dated this 13th day of September 2026.

*/s/ Jason W. Imler, Esq.*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com

Ashley@ImlerLaw.com

Tiffany@ImlerLaw.com Attorneys for Plaintiff